BUILDING ENERGETIX CORPORATION, a Nevada Corporation; and GARY HILL, Appellants, v. EHE, LP, a Nevada Limited Partnership; JEWEL LEWIS, Trustee of the JEWEL LEWIS TRUST; K.M. KROYER, Trustee of the K.M. KROYER TRUST; and JOSEPH S. LOUDEN, Respondents.

No. 57203

February 14, 2013

294 P.3d 1228

*Robison Belaustegui Sharp & Low* and *Mark G. Simons*, Reno, for Appellants.

*Jeffrey K. Rahbeck*, Zephyr Cove, for Respondents.

Before PICKERING, C.J., HARDESTY and CHERRY, JJ.

## OPINION

By the Court, PICKERING, C.J.:

This appeal from a deficiency judgment after foreclosure raises two questions: (1) whether a valid nonjudicial foreclosure sale may occur under NRS Chapter 107 after a delinquent-tax certificate has issued to the county treasurer under NRS Chapter 361; and (2) whether, consistent with NRS 107.080(5), a trust-deed beneficiary who acquires such property on credit bid at the foreclosure sale can later redeem, or obtain reconveyance of, the property from the county treasurer. We agree with the district court that a nonjudicial foreclosure sale may occur after a delinquent-tax certificate has issued and before the final disposition of the property, and that the property's acquirer can then pay the delinquent taxes and other amounts due to redeem or obtain reconveyance of the property from the court treasurer. Thus, we answer both questions

in the affirmative. Since the foreclosure sale was proper, the deficiency judgment was as well. We therefore affirm.

## I.

The parties presented their dispute to the district court on stipulated facts. Appellant Building Energetix Corporation (BE) executed a $490,702 promissory note, secured by a deed of trust on property in Lyon County and guaranteed by appellant Gary Hill, to respondents or their assignors (collectively, EHE). BE did not pay the annual property taxes due, and in June 2007, a delinquent-tax certificate issued under NRS 361.570. The certificate authorized the Lyon County treasurer to hold the property in trust for the State and County for the two-year statutory redemption period.

BE did not make the payments due on the EHE note, either. On June 10, 2008, a year after the Lyon County delinquent-tax certificate issued, EHE, through its trustee, recorded a notice of default and election to sell. A nonjudicial foreclosure sale followed on October 10, 2008, at which time EHE purchased the property by credit bid of $325,000, receiving a trustee's deed in return. On April 8, 2009, EHE brought this action under NRS 40.455 against BE and Hill (hereafter, collectively, BE) for the deficiency.

For some unknown reason, EHE did not record its trustee's deed until October 2009, a year after the foreclosure sale. In the meantime, the two-year period to redeem the property from the 2007 delinquent-tax certificate ran out. NRS Chapter 361 provides for a treasurer's deed to issue after the two-year redemption period expires. *See* NRS 361.585(1); NRS 361.390. A treasurer's deed issued in this matter on June 8, 2009—after EHE had foreclosed on the property and sued BE for a deficiency judgment but before EHE recorded its trustee's deed. The county continued to hold the property in trust under NRS 361.585(2) until EHE paid the back taxes, interest, and penalties due, which occurred in March 2010. In return, on April 19, 2010, the county issued a reconveyance deed to EHE as provided in NRS 361.585(3) and (4).

BE asserted the one-action rule, NRS 40.430, and its associated anti-deficiency statutes, *see* NRS 40.455-40.459, as a defense to EHE's suit for the deficiency remaining due on the note after the foreclosure sale. BE argued that EHE could not validly foreclose while the county treasurer held the property in trust on the delinquent-tax certificate and that, without a valid foreclosure, NRS 40.455 precluded EHE from recovering a deficiency judgment. The district court disagreed. It held that the 2007 delinquent-tax certificate did not diminish EHE's trustee's authority to sell the property at foreclosure in 2008. It awarded EHE a $140,403 deficiency judgment against BE, who now appeals.

## II.

BE urges reversal on the grounds that the 2007 delinquent-tax certificate prevented EHE from validly foreclosing on the property in 2008 and that, without a valid foreclosure sale, EHE cannot recover a deficiency judgment under NRS 40.455. BE maintains that once a delinquent-tax certificate issues under NRS 361.570, the subject property must be redeemed before a valid foreclosure sale can occur. Going further, BE argues that EHE is precluded from claiming rights under both the 2008 trustee's deed and the county's 2010 reconveyance deed. As support, BE points to language in Nevada's nonjudicial foreclosure statute, NRS 107.080, to the effect that a nonjudicial foreclosure sale "vests in the purchaser the title of the grantor . . . without equity or right of redemption." NRS 107.080(5). In BE's view, EHE could not have redeemed the property by reconveyance deed in 2010 if it validly acquired the property by credit bid at the 2008 foreclosure sale, because under NRS 107.080(5), title acquired via nonjudicial foreclosure sale is "without . . . right of redemption." Because EHE did redeem the property by reconveyance deed in 2010, BE argues that EHE must not have validly acquired the property by credit bid in 2008. Finally, BE argues that since EHE acquired the property by reconveyance rather than trustee's deed, EHE cannot recover a deficiency judgment under NRS 40.455.[1]

While a district court's deficiency determination ordinarily receives deferential review, *Tahoe Highlander v. Westside Fed. Sav.*, 95 Nev. 8, 11, 588 P.2d 1022, 1024 (1979), here the parties do not

---

[1]BE also urged in the district court and at oral argument that EHE's delay in recording its October 2008 trustee's deed prevented completion of the foreclosure sale, such that Lyon County's later-issued but first-recorded June 2009 tax deed nullified the trustee's deed. The district court rejected this contention based on *In re Grant*, 303 B.R. 205 (Bankr. D. Nev. 2003), which holds, consistent with early Nevada cases, that a trustee's sale is complete when the gavel falls. *Id.* at 210 (citing *Dazet v. Landry*, 21 Nev. 291, 297, 30 P. 1064, 1067 (1892), *overruled on other grounds by Golden v. Tomiyasu*, 79 Nev. 503, 387 P.2d 989 (1963); *In the Matter of Smith*, 4 Nev. 254 (1868)) ("Notably missing from the Nevada foreclosure procedures is the requirement that a trustee's deed must be recorded in order for the sale to be complete or the transfer to be effective."). BE did not address this issue in its opening brief, so neither do we. *See State of Nevada v. Glusman*, 98 Nev. 412, 428, 651 P.2d 639, 649 (1982). Nor do we address the effect of the 2009 amendments to NRS 107.080, which require recordation of the trustee's deed following a nonjudicial foreclosure sale within 30 days of the sale or impose specified civil penalties, as both parties conceded at oral argument that the 2009 amendments to NRS 107.080 do not apply to a foreclosure sale set in motion before their effective date. *See* 2009 Nev. Stat., ch. 247, § 1, at 1005.

dispute the district court's findings but only whether EHE was statutorily entitled to a deficiency judgment at all. Statutory interpretation involves law, not fact, so de novo review applies. *Walters v. Dist. Ct.*, 127 Nev. 723, 727, 263 P.3d 231, 234 (2011).

## A.

The county's 2007 delinquent-tax certificate did not prevent EHE from purchasing the property at the 2008 foreclosure sale. BE's argument to the contrary proceeds from the premise that, once a delinquent-tax certificate issues under NRS 361.570, the county becomes the owner of the property, meaning the tax certificate must be extinguished before title can transfer, whether by foreclosure sale or otherwise. But this is not what NRS 361.570 says or what NRS Chapter 361 contemplates.

In NRS Chapter 361, the Legislature has established a statutory scheme for the collection of property taxes that, while amended from time to time, has endured since 1957. *See Casazza v. A-Allstate Abstract Co.*, 102 Nev. 340, 344, 721 P.2d 386, 389 (1986) (describing the statutory framework NRS Chapter 361 establishes for collecting property taxes). The issuance of a delinquent-tax certificate is only a first step in the tax collection process. If property taxes become delinquent, NRS 361.570(1) provides that a tax certificate shall issue, "authoriz[ing] the county treasurer, as trustee for the State and county, to hold [the] property described in the certificate for the period of 2 years . . . unless sooner redeemed." Assuming the 2 years pass with no redemption, the next step is issuance of a tax deed of the property, again to the county treasurer "in trust for the use and benefit of the State and county . . . ." NRS 361.585(1). But even then, the Legislature gives "owners and others holding interests in property conveyed to the county treasurer following the two-year redemption period an additional opportunity to protect their interests." *Casazza*, 102 Nev. at 344, 721 P.2d at 389 (citing NRS 361.585(3) and (4)).

Until the county gives notice of sale or otherwise finally disposes of the property, "any person specified in subsection 4 [of NRS 361.585] is entitled to have the property reconveyed upon payment to the county treasurer" of the delinquent taxes, plus penalties, interest, and costs. NRS 361.585(3). Subsection 4 of NRS 361.585 provides for reconveyance to

> one or more of the [following] persons . . . , as their interests may appear of record:
> (a) The owner.
> (b) The beneficiary under a note and deed of trust.

(c) The mortgagee under a mortgage.

(d) The creditor under a judgment.

. . . .

(f) The person holding a contract to purchase the property before its conveyance to the county treasurer.

. . . .

(h) The successor in interest of any person specified in this subsection.

Reconveyance under NRS 361.585, as distinct from conveyance under 361.595, "is in the nature of a redemption, and divests the county of its title to the property." *Casazza*, 102 Nev. at 347, 721 P.2d at 391. It does not give the redeeming party "any interest greater than the interest he previously held." *Id.* at 347, 721 P.2d at 390.

Under these statutes, although the Lyon County treasurer held the property in trust pursuant to the 2007 delinquent-tax certificate and thereafter the 2009 tax deed, it did not thereby become the "owner" of the property, such that BE's ownership could not be extinguished by nonjudicial foreclosure sale in 2008. On the contrary, NRS 361.570 and NRS 361.585 both repeatedly refer to "the owner" as the title holder of record, not the county, and contemplate successorship despite the existence of the tax certificate or deed. Thus, NRS 361.570(2)(c) requires the tax certificate to state "the name of the owner or taxpayer of each property, if known." NRS 361.570(4) states, "Before the owner or his or her successor redeems the property, he or she must also pay the county treasurer holding the certificate any additional taxes, penalties and costs . . . ." And NRS 361.585(4)(a) and (h) list the "owner" and "successor in interest of any person specified in this subsection" as among the persons entitled to reconveyance.

"The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' " *BedRoc Limited, LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). NRS 361.570 and NRS 361.585 both recognize that the "owner" remains the title holder of record until the right to redeem or obtain reconveyance has expired. *Cf. Shelledy v. Lore*, 836 P.2d 786, 788 (Utah 1992) (applying analogous Utah law, the court observed that "following the preliminary tax sale, the property owner, although he is delinquent in his real estate taxes, maintains the underlying ownership interest in the property"). These statutes acknowledge that post-certificate and post-deed transfers might occur when "successors" are named as potential redemptioners. And they say nothing about freezing all foreclosures or other transfers

until the property is redeemed from, or reconveyed by, the county treasurer.

BE argues that "allowing a valid nonjudicial foreclosure process to proceed during the pendency of a Tax Certificate would create absurd results" and defeat "the purpose of the Tax Certificate[:] to impede marketability of title until taxes are paid." But Chapter 361's object, like statutory tax collection schemes elsewhere, "is not the acquisition of the property, but rather the collection of taxes." *Little v. United States*, 704 F.2d 1100, 1105-06 n.5 (9th Cir. 1983) (applying an analogous California tax collection statute). "[I]t is the settled policy of [such laws] to give a delinquent taxpayer every reasonable opportunity compatible with the rights of the State to redeem his property and to return it to the tax rolls for further governmental support." *Id.*

Neither Chapter 361's text nor its apparent purpose supports BE's argument that the 2007 delinquent-tax certificate prevented a valid foreclosure sale from occurring in 2008. At least one court has held, under similar circumstances, that a valid foreclosure sale can occur notwithstanding the state's acquisition of the property, subject to a still-open right of redemption. *Potter v. Entler*, 163 P.2d 490, 491-92 (Cal. Ct. App. 1945) (interpreting an analogous tax collection statute). Contrary to BE's assertion, this result is not absurd; in fact, it appears to be the norm. *See* 47 Am. Jur. 2d *Judicial Sales* § 177 (2006); Marianne M. Jennings, *From the Courts*, 37 Real Est. L. J. 175 (2008). Therefore, we conclude that the 2008 foreclosure sale was valid.[2]

## B.

BE next argues that there is a fatal inconsistency between EHE acquiring BE's title through the 2008 nonjudicial foreclosure sale and thereafter, in 2010, obtaining a reconveyance deed from the county. In essence, BE maintains a party cannot both purchase property at a nonjudicial foreclosure sale and later redeem it from the county by paying the back taxes due. Again, the applicable statutes contemplate this exact scenario.

---

[2]This conclusion assumes that the foreclosure sale was complete in 2008, when the gavel fell. *See supra* note 1. The result does not change even if the foreclosure sale did not conclude until October 2009, when the trustee's deed was recorded. Although the tax deed was issued in June 2009, BE still had an interest in the property, if only in obtaining its reconveyance, such that EHE could validly foreclose. *Compare Casazza*, 102 Nev. at 347, 721 P.2d at 391 (holding that reconveyance pursuant to NRS 361.585 restores the redemptioner's interest, whatever it may be, in the property), *with Potter*, 163 P.2d at 491-92 (holding that an unexpired right of redemption is a property interest that may be foreclosed).

Nevada law provides for both judicial and nonjudicial foreclosure sales. NRS 40.430; NRS 107.080. A principal difference between them is that a judicial foreclosure sale "must be conducted in the same manner as the sale of real property upon execution," NRS 40.430(4), meaning the "property shall be subject to redemption" under NRS Chapter 21. *See* NRS 21.190. Under NRS 21.210,[3] the debtor has an absolute one-year right to redeem the property from the purchaser at the execution- or judicial-foreclosure sale. A nonjudicial foreclosure sale, by contrast, does not give the debtor the right to redeem the property from the purchaser. Thus, NRS 107.080(5) states, "Every sale made under the provisions of this section and other sections of this chapter [107 governing nonjudicial foreclosure sales] vests in the purchaser the title of the grantor and any successors in interest *without equity or right of redemption*." (Emphasis added.)

BE seizes on NRS 107.080(5)'s words "without . . . right of redemption." It argues that they curtail not only redemption by a debtor from a purchaser at a nonjudicial foreclosure sale but also redemption by the foreclosure-sale purchaser from the county treasurer under NRS 361.570 and NRS 361.585. BE misreads NRS 107.080(5). The phrase "without . . . right of redemption" immediately follows and modifies the words "title of the grantor and any successors in interest." It addresses potential redemption rights of the debtor—the grantor of the deed of trust being foreclosed—not rights acquired by the purchaser at the nonjudicial foreclosure sale as against a county treasurer under NRS Chapter 361.

The doctrine of *noscitur a sociis* teaches that "words are known by—acquire meaning from—the company they keep." *Ford v. State*, 127 Nev. 608, 622 n.8, 262 P.3d 1123, 1132 n.8 (2011) (citing *Orr Ditch Co. v. Dist. Ct.*, 64 Nev. 138, 146, 178 P.2d 558, 562 (1947)). NRS 107.080(1) confers upon the trustee, when real property is used to secure the performance of an obligation, a power of sale when that obligation is breached. NRS 107.080(5) deprives the debtor (BE) of rights of redemption against the pur-

---

[3]NRS 21.210 reads:

The judgment debtor or redemptioner may redeem the property from the purchaser any time within 1 year after the sale on paying the purchaser the amount of his or her purchase price with 1 percent per month thereon in addition, to the time of redemption, together with:

1. The amount of any assessment, taxes or payments toward liens which were created prior to the purchase, which the purchaser may have paid thereon after purchase, and interest on such amount; and

2. If the purchaser is also a creditor, having a prior lien to that of the redemptioner, other than the judgment under which the purchase was made, the amount of such lien, with interest.

chaser at a nonjudicial foreclosure. The remainder of NRS 107.080(5) and (6) make this clear. Thus, NRS 107.080(5)(a)-(c) and NRS 107.080(6) enumerate the limited instances in which a nonjudicial foreclosure sale may be made void, *i.e.*, lack of substantial compliance with NRS Chapter 107 under NRS 107.080(5)(a) or lack of proper notice to the grantor or other person entitled to notice of default and election to sell under NRS 107.080(6). With these exceptions, a nonjudicial foreclosure sale terminates the debtor's legal title. *See Charmicor, Inc. v. Bradshaw Finance Co.*, 92 Nev. 310, 313, 550 P.2d 413, 415 (1976). NRS 107.080(5)'s "right of redemption" language ensures that purchasers at nonjudicial foreclosure sales receive the "title of the grantor," unencumbered by a judicial-foreclosure debtor's "right of redemption." Nothing in the statute suggests, however, that the beneficiary of a deed of trust who takes title by credit bid at a nonjudicial foreclosure sale does not do so subject to whatever property tax liens may exist, which it thereafter may pay off, whether by redemption, reconveyance, or otherwise. *See* NRS 361.450.

In sum, the 2010 reconveyance deed to EHE was valid and did not undermine the legitimacy of the 2008 trustee's deed. Since EHE was the legitimate grantee of both deeds, BE's final argument that a party who acquires title by means of reconveyance deed cannot maintain a suit for a deficiency under NRS 40.455 fails.

We affirm.

HARDESTY and CHERRY, JJ., concur.

